IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| **PAUL D. DRAWHORN and RONALD W. POOR,** for themselves and for all others similarly situated,<br>   Plaintiffs,<br><br>v.<br><br>**QWEST COMMUNICATIONS COMPANY, LLC, SPRINT COMMUNICATIONS COMPANY L.P., and LEVEL 3 COMMUNICATIONS, LLC,**<br><br>   Defendants. | Case No. 1:99-cv-00415-RC<br>**JURY TRIAL DEMANDED**<br><br><br>**AMENDED STATEWIDE CLASS ACTION COMPLAINT** |

Plaintiffs Paul D. Drawhorn and Ronald W. Poor ("Plaintiffs") and all others similarly situated, for their cause of action against Qwest Communications Company LLC ("Qwest"), Sprint Communications Company L.P., and Level 3 Communications, LLC ("Level 3") (collectively "Defendants") state as follows:

**Jurisdiction**

1. This Court has jurisdiction over the causes of action in this case under 28 U.S.C. § 1332(d)(2). At least one member of the Class defined herein is a citizen of a state different from any defendant, the proposed class has at least 100 members, and the amount in controversy, exclusive of interest and costs, exceeds the sum or value of Five Million Dollars ($5,000,000.00).

2. Additionally, or in the alternative, this Court has jurisdiction pursuant to 28 U.S.C. § 1331, because a substantial portion of the rights of way at issue in Texas were originally granted to railroads by the United States government under various federal land grants, and this action therefore presents a substantial federal question.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that Defendants do business and are qualified to do business in this District; a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and a substantial part of property that is the subject of this action is situated in this District.

**Summary of the Case**

4. Defendants Qwest, Sprint and Level 3 are engaged in Texas and throughout the United States in the installation, maintenance, and commercial use of fiber-optic cable telecommunications systems. In constructing those telecommunications systems, Defendants buried their fiber-optic cables and installed related telecommunications equipment ("Telecommunications Cable Systems"), within railroad rights of way throughout Texas ("Rights of Way"). In their efforts to install the Telecommunications Cable Systems as quickly and inexpensively as possible, Defendants chose to ignore the property rights of Plaintiffs and other members of the Class defined herein. Plaintiffs and other members of the Class in fact owned the land underlying or adjacent to the railroad Rights of Way at issue, and Defendants did not seek Plaintiffs' or other Class members' permission or pay them any compensation for the installation, maintenance, and use of their Telecommunications Cable Systems.

5. Rather, without notifying Plaintiffs and Class members, Defendants entered into agreements with several railroads in Texas and across the country, including Union Pacific Railroad Company, BNSF Railway Company, Consolidated Rail Corporation, CSX Transportation, Inc., and Norfolk Southern Railway Company (collectively, the "Railroads"). Under those agreements, Defendants paid the Railroads for the purported right to install their Telecommunications Cable Systems within the Rights of Way at issue.

6. But those Rights of Way are limited in scope to *railroad purposes*. They may not be used for any purpose other than operating a railroad. Burying fiber-optic cable, installing

2

related equipment, and maintaining and using those components as part of a commercial-telecommunications business, are outside this limited scope. The Railroads therefore could not lawfully transfer, assign, or apportion to Defendants the use of the Rights of Way for commercial-telecommunications purposes, and Defendants should have negotiated with and paid Plaintiffs and members of the Class—not the Railroads—for the right to install their Telecommunications Cable Systems within the Rights of Way.

7. By failing to do so, and by the installation, maintenance, and use of the Telecommunications Cable Systems within the Rights of Way, Defendants have committed present, permanent, and continuing trespasses on the land of Plaintiffs and members of the Class. Those trespasses were induced and facilitated by the Railroads' complete disregard of the limited real-property interests they held in the subject properties.

8. Defendants' trespasses are for commercial, non-railroad purposes, and have resulted and will result in the generation of substantial revenue for Defendants and the Railroads. Defendants have been unjustly enriched to the extent that they have received and retained profits and rents as a result of their unlawful use and occupation of Plaintiffs' land and land owned by other Class members.

### The Parties

9. Paul D. Drawhorn is a citizen of Texas and is the owner in fee simple of land located in Jefferson County, Texas. One or more of the Defendants entered upon that land, excavated it, and installed a Telecommunications Cable System within the railroad right of way encumbering it.

10. Ronald W. Poor is a citizen of Texas and is the owner in fee simple of land located in Live Oak County, Texas. One or more of the Defendants entered upon that land,

excavated it, and installed a Telecommunications Cable System within the railroad right of way encumbering it.

11.     Defendant Qwest Communications Company, LLC ("Qwest") is a Delaware single-member limited liability company with its principal place of business in Louisiana. Qwest Communications Company, LLC's sole member is Qwest Services Corporation, which is a Colorado corporation with its principal place of business in Louisiana. Qwest, by itself or through its divisions, subsidiaries, affiliates, joint-venture partners, agents or otherwise, owns and operates telecommunications equipment – including fiber-optic and other telecommunications cable – and provides telecommunications and related services in Texas and throughout the United States. Qwest is legally responsible for the acts of its subsidiaries, affiliates, joint-venture partners, agents, and predecessors in interest that are described in this Complaint, including specifically Qwest Communications International, Inc. and Southern Pacific Telecommunications Company.

12.     Defendant Sprint Communications Company L.P. ("Sprint") is a Delaware limited partnership, with its principal place of business in Kansas. Sprint's partners are, upon information and belief, US Telecom, Inc., a Kansas corporation with its principal place of business in Kansas, UCOM, Inc., a Missouri corporation with its principal place of business in Kansas, UTELCOM, Inc., a Kansas corporation with its principal place of business in Kansas, and Sprint International Communications Company, a Delaware corporation with its principal place of business in Virginia. Sprint, by itself or through its divisions, subsidiaries, affiliates, joint-venture partners, agents or otherwise, owns and operates telecommunications equipment – including fiber-optic and other telecommunications cable – and provides telecommunications and related services in Texas and throughout the United States. Sprint is legally responsible for

the acts of its subsidiaries, affiliates, joint-venture partners, agents, and predecessors in interest that are described in this Complaint, including specifically Sprint Communications Company L.P., US Telecom, Inc., UCOM, Inc., UTELCOM, Inc., and Sprint International Communications Corporation.

13. Defendant Level 3 Communications, LLC ("Level 3") is a Delaware single-member limited liability company, with its principal place of business in Colorado. Level 3 Communications, LLC's only member is Level 3 Financing, Inc., which is a Delaware corporation with its principal place of business in Colorado. Level 3 Financing, Inc. is a wholly owned subsidiary of Level 3 Communications, Inc. Level 3 Communications, Inc. is a publicly-traded Delaware corporation with its principal place of business in Colorado. Level 3, by itself or through its divisions, subsidiaries, affiliates, joint venture partners, agents or otherwise, owns and operates telecommunications equipment—including fiber-optic and other telecommunications cable—and provides telecommunications and related services in Texas and throughout the United States. Level 3 is legally responsible for the acts of its subsidiaries, affiliates, joint venture partners, agents, and predecessors in interest, including Level 3 Communications, Inc., Level 3 Telecom Holdings, Inc., WilTel Communications, Inc., WilTel Communications, LLC, and Williams Communications, LLC, f/k/a Williams Communications, Inc., f/k/a Vyvx, Inc.

## Class Action Requirements

14. This action is brought by Plaintiffs as a class action, on their own behalf and on behalf of all others similarly situated, under the provisions of Fed. R. Civ. P. 23.

15. Plaintiffs represent a Class ("the Class") consisting of all persons or entities who own or owned, or held any interest in, real property underlying or adjacent to the cable side of a railroad right of way on which Qwest and/or Sprint, and/or Level 3 have entered to install or

5

maintain a fiber-optic or other telecommunications cable. Excluded from the Class are Defendants, all state and federal governments and their agencies, any Indian tribe, and the trial judge.

16. This action seeks recovery only for economic losses suffered by Plaintiffs and members of the Class and expressly is not intended to request any recovery for personal injury.

### Fed. R. Civ. P. 23(a) Prerequisites

17. The Class is so numerous that the individual joinder of all members is impracticable. Although an exact number is unknown, Plaintiffs believe there are at least hundreds, and likely several thousands, of Class members geographically dispersed throughout Texas.

18. There are questions of law and fact common to all members of the proposed Class, and these common questions predominate over any questions affecting individual Class members.

19. Plaintiffs' claims are typical of the claims of the proposed Class. Plaintiffs have been injured by the same common course of wrongful conduct by Defendants that has damaged the other members of the Class.

### Adequacy of Class Representatives

20. Plaintiffs will fairly, fully, and adequately protect the interests of the members of the Class, and have retained competent counsel experienced in prosecuting complex class-action litigation. Plaintiffs have no interests that conflict with, or are adverse to, other members of the Class.

### Fed. R. Civ. P. 23(b) Provisions

21. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent adjudications with respect to individual members of the Class that

could establish incompatible standards of conduct for Defendants, or which could, as a practical matter, be dispositive of the interests of non-parties.

22. Questions of law and fact are common to all members of the Class and predominate over any questions affecting only individual members, such that a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the damages suffered by the individual members of the Class may be relatively small, the burden and expense of individual prosecution of this complex and extensive litigation makes it impractical for individual Class members to seek redress for the wrongful conduct alleged here. Absent a class action, Defendants would likely retain the benefits of their wrongdoing. In addition, individual litigation would increase the delay and expense to all parties and to the court system. By contrast, the class-action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

23. Plaintiffs anticipate no unusual difficulties in the management of this litigation as a class action.

**Common Facts Applicable to All Counts**

24. Over the last several decades, as fiber-optic cable technology improved, voice and data capacity needs increased, and use of the Internet exploded, telecommunications companies (including Defendants) sought to construct new, nationwide fiber-optic cable networks to carry long-distance voice and data transmissions. The telecommunications company first completing a nationwide network using the new and improved fiber-optic technology would enjoy significant competitive and economic advantages over its competitors.

25. Defendants therefore sought to complete their nationwide fiber-optic networks as quickly as possible, but faced the daunting task of laying cables across thousands of miles of land.

26. To achieve both lower costs and extra speed in installing their Telecommunications Cable Systems, Defendants deliberately bypassed Plaintiffs and members of the Class on whose property Defendants wanted to, and did, install their Telecommunications Cable Systems. Instead, Defendants entered into agreements with the Railroads that purported to grant Defendants the right to install, maintain, and use their Telecommunications Cable Systems within the railroad Rights of Way that cross over or are adjacent to Plaintiffs' and Class members' land.

27. Under those agreements, Defendants were to pay, have paid, and continue to pay substantial sums of money and other compensation to the Railroads. Upon information and belief, Defendants have paid millions of dollars to the Railroads in exchange for purported licenses or easement agreements allowing Defendants to use the railroad Rights of Way on or adjacent to property owned by Plaintiffs and members of the Class.

28. The railroad Rights of Way within which Defendants installed, or had installed for them, their Telecommunications Cable Systems, are limited in scope to purposes necessary to the operation of a railroad. Defendants' uses of the railroad Rights of Way for commercial-telecommunications purposes are outside that limited scope. For this reason, the Railroads that purported to license Defendants' installation, maintenance, and use of the railroad Rights of Way for commercial-telecommunications purposes had no legal right to do so without the consent of, and without providing compensation to, the owners of the land underlying or adjacent to the Rights of Way.

29. Defendants did not inform Plaintiffs or other Class members of their intent to enter upon Plaintiffs' and Class members' land or to install, maintain, and use a Telecommunications Cable System within the Rights of Way. Nor did Plaintiffs and the Class members give Defendants or the Railroads permission to enter upon their land, exceed the scope of the Right of way, or install, maintain, or use Telecommunications Cable Systems within the Rights of Way.

30. Defendants knew or had reason to know that they had no right to enter, or allow others to enter, Plaintiffs' and other Class members' land, or to install, maintain, and use Telecommunications Cable Systems.

## COUNT I

### (Damages for Trespass – Common Facts and Law)

31. Plaintiffs hereby incorporate by reference and reallege the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

32. By the Defendants' entry upon the Rights of Way, and by their installation, maintenance, and use of Telecommunications Cable Systems within the Rights of Way, all without permission or right given by Plaintiffs and members of the Class, Defendants have committed a continuing and permanent trespass on Plaintiffs' and Class members' land.

33. At all times, Defendants knew, or had reason to know, that the Railroads did not have the authority to grant Defendants the legal right to install, maintain, or use Telecommunications Cable Systems on Plaintiffs' and Class members' land. Nonetheless, through concerted action, Defendants entered into agreements with the Railroads providing for Defendants' installation, maintenance, and use of Telecommunications Cable Systems on land belonging to Plaintiffs and members of the Class, and further providing for Defendants to pay the

Railroads monies over a period of years for the purported right to install, maintain, and use Telecommunications Cable Systems on land belonging to Plaintiffs and members of the Class.

34. As a direct and proximate result of their trespass upon the land of Plaintiffs and members of the Class, Defendants realized substantial revenue and profits from the commercial occupation and use of said land, but have failed to pay any part of said revenue and profits to Plaintiffs and Class members.

35. As a proximate result of Defendants' trespass on their land, Plaintiffs and members of the Class have been damaged by the diminution in the value of their land, including diminished rental value, and by the deprivation of their rights to determine possession and use of their land. Plaintiffs and the Class members therefore are entitled to an award of compensatory damages from Defendants in an amount to be proved at trial.

## COUNT II

**(Unjust Enrichment – Common Facts and Law)**

36. Plaintiffs hereby incorporate by reference and reallege the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

37. As a result of Defendants' unlawful use and occupation of their land—through the assistance and ineffectual authorization of the Railroads—Plaintiffs and other Class members have been deprived of the rents, profits, and other benefits properly arising from their ownership and control of the land. Defendants' unlawful commercial use and occupation of the land—by installing, maintaining, and using Telecommunications Cable Systems—has resulted in Defendants' receipt and retention of millions of dollars in the form of rents, profits, and other benefits properly payable to Plaintiffs and other members of the Class.

38. Defendants have been unjustly enriched by their receipt and retention of millions of dollars in rents, profits, and other benefits properly payable to Plaintiffs and other Class

members and, under the circumstances and in good conscience, they ought not be allowed to retain those rents, profits, and benefits.

39. Plaintiffs and Class members are entitled to a judgment requiring Defendants to disgorge and pay to them all sums they have received that are properly due and owing to Plaintiffs and Class members as rents, profits, and other benefits incidental to ownership of their land, as restitution for the unjust enrichment of Defendants.

## COUNT III

**(Slander of Title – Common Facts and Law)**

40. Plaintiffs hereby incorporate by reference and reallege the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

41. In the license agreements between Defendants and the Railroads, in Defendants' agreements with the Railroads regarding use of the Rights of Way or Telecommunications Cable Systems, in publicly-filed or published documents, and in its acts of placing signs and posts marking the location of the fiber-optic cable, Defendants made false and unfounded statements indicating or suggesting that they possess rights of occupancy or use of property owned by Plaintiffs and other members of the Class.

42. Defendants' statements concerning their alleged interest in the real property of Plaintiffs and other members of the Class were made with knowledge or reckless disregard of their falsity.

43. As a result of Defendants' slander of the title or interest of Plaintiffs and other Class members in the Rights of Way, Plaintiffs and members of the Class have sustained damages in the form of loss of use of their property, loss in marketable value of their property, and expenses necessary to obtain a judicial declaration that the titles of Plaintiffs and other Class

members are free and clear of any interest or right of use, possession or occupancy by Defendants.

## COUNT IV

### (Injunctive Relief – Common Facts and Law)

44. Plaintiffs hereby incorporate by reference and reallege the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

45. Plaintiffs and members of the Class are owners of real property or interests in real property in Texas affected by Defendants' actions and thus have standing to seek declaratory and/or injunctive relief.

46. The railroad Rights of Way within which Defendants installed, or had others install, their Telecommunications Cable Systems, are limited to the surface of the land and may be used only for railroad purposes. The right to license or consent to all non-railroad uses on the land encumbered by the railroad Rights of Way belongs to Plaintiffs and members of the Class. Thus, the Defendants' commercial-telecommunications use of the Rights of Way is unlawful.

47. Plaintiffs pray that this Court enter a judgment declaring that: Defendants have no right to install, maintain, or use their Telecommunications Cable Systems within the railroad Rights of Way; Defendants have no legal right to possess the property beneath the railroad Rights of Way; Defendants may not lawfully continue to maintain and use their Telecommunications Cable Systems within the railroad Rights of Way; Defendants be enjoined from using the railroad Rights of Way; Defendants be ordered to remove their Telecommunications Cable Systems from the railroad Rights of Way; and the Railroads have no legal right to allow non-railroad use of the Rights of Way.

### Prayer for Relief

WHEREFORE, Plaintiffs pray for the following relief:

1.  That this Court certify the Class described herein, and name Plaintiffs as the representatives of the Class and their counsel as counsel for the Class.

2.  That this Court enter a judgment against Defendants in an amount sufficient to compensate Plaintiffs and other Class members for the direct and consequential damages caused by Defendants' trespasses, and for attorneys' fees, costs, and expenses, and for all other relief deemed just and proper.

3.  That this Court enter a judgment against Defendants in an amount equal to the amount by which Defendants have been unjustly enriched as a result of their unlawful entry upon, use, occupation, and collections of rents and profits from Plaintiffs and Class members, and for attorneys' fees, costs, and expenses, and for all other relief deemed just and proper by the Court.

4.  That this Court enter a judgment against Defendants in an amount sufficient to compensate Plaintiffs and other Class members for the direct and consequential damages caused by Defendants' slander of title, including the costs and expenses necessary to obtain judicial declarations that the titles of Plaintiffs and other Class members are free and clear of any interest or right of use, possession or occupancy by Defendants, and for attorneys' fees, costs, and expenses, and for all other relief deemed just and proper by the Court.

5.  That this Court enter a judgment against Defendants declaring that: Defendants have no right to bury, maintain, or use their Telecommunications Cable Systems within the railroad Rights of Way; Defendants have no legal right to possess the property beneath the railroad Rights of Way; Defendants may not lawfully continue to maintain and use their Telecommunications Cable Systems within the railroad Rights of Way; Defendants be enjoined from using the railroad Rights of Way; Defendants be ordered to remove their

Telecommunications Cable Systems from the railroad Rights of Way; and the Railroads have no legal right to allow non-railroad use of the Rights of Way; for attorneys' fees, costs, and expenses; and for all other relief just and proper.

6. That the Court enter an award of punitive or exemplary damages against Defendants in an amount to be determined by a jury.

## **Jury Demand**

Plaintiffs hereby demand a trial by jury.

Date: September 10, 2012

Respectfully submitted,

/s/ John B. Massopust
John B. Massopust
**ZELLE HOFMANN VOELBEL & MASON LLP**
500 Washington Avenue South, Suite 4000
Minneapolis, MN 55415
Telephone: (612) 339-2020
Facsimile: (612) 336-9100
E-Mail: jmassopust@zelle.com